UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
FRANK BRANDON,
                                        Plaintiff,

            -against-
                                                                            07 CV 8789 (LAP)

THE CITY OF NEW YORK, P.O. SAID SALIM, Shield
No. 09517, Individually and in his Official Capacity,
P.O. ANDRO STAMBUK, Shiled No. 28510, Individually
and in his Official Capacity P.O. MARC KLAUSNER,
Shiled No. 01983, Individually and in his Official Capacity,
P.O.s "JOHN DOE" #1-10, Individually and in their Official
Capacities, (the name John Doe being fictitious, as the true
names are presently unknown),

                                        Defendants.
-------------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**


Jon L. Norinsberg, Esq.
225 Broadway, Suite 2700
New York, New York 10007
(212) 791-5396

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 1

STANDARD FOR SUMMARY JUDGMENT ......................................................... 4

ARGUMENT ............................................................................................................. 6

I.  SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S FALSE ARREST
    CLAIM ............................................................................................................. 6

    A.  THE PARTIES HAVE GIVEN MARKEDLY DIFFERENT TESTIMONY
        ABOUT THE EVENTS WHICH LED UP TO PLAINTIFF'S ARREST ............ 6

    B.  THE JURY MUST DECIDE WHETHER OR NOT PLAINTIFF'S
        INVESTIGATORY STOP  RIPENED  INTO A *DE FACTO* ARREST WHEN
        HE WAS TACKLED BY P.O. STAMBUK ......................................................... 8

II. SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S MALICIOUS
    PROSECUTION CLAIM .............................................................................. 9

    A.  THERE IS A MATERIAL FACTUAL DISPUTE AS TO WHETHER OR NOT
        P.O. SALIM  TESTIFIED FALSELY BEFORE THE GRAND JURY ............... 9

    B.  P.O. SALIM'S GRAND JURY TESTIMONY IS ADMISSIBLE AND SHOULD
        BE CONSIDERED BY THIS COURT  .............................................................. 10

        I.   P.O. SALIM'S DEPOSITION TESTIMONY INDEPENDENTLY
             ESTABLISHES  HIS FALSE TESTIMONY BEFORE THE GRAND
             JURY  ............................................................................................ 12

        II.  THE PARTIES NEVER ENTERED INTO AN AGREEMENT
             REGARDING THE USE OF GRAND JURY MINUTES IN THIS
             ACTION ......................................................................................... 13

    C.  P.O. SALIM'S FALSE STATEMENTS TO ADA ROSALES PROVIDE A
        SEPARATE BASIS FOR PLAINTIFF'S  MALICIOUS PROSECUTION
        CLAIM  ............................................................................................................ 14

    D.  THE ELEMENT OF "MALICE" MAY BE INFERRED FROM
        P.O. SALIM'S MISCONDUCT AND FROM  THE ABSENCE OF PROBABLE
        CAUSE  ............................................................................................................ 15

III.   THE "FELLOW OFFICER RULE" HAS NO APPLICATION TO THIS CASE, AS
       NEITHER P.O. STAMBUK NOR P.O. KLAUSNER WERE ACTING UPON
       INFORMATION PROVIDED TO THEM BY P.O. SALIM ......................................... 16

       A.   BOTH OFFICERS TESTIFIED THAT THEY DID NOT KNOW THE
            BASIS FOR PLAINTIFF'S ARREST UNTIL AFTER THE INCIDENT TOOK
            PLACE ...................................................................................................... 16

       B.   BOTH OFFICERS CAN BE HELD LIABLE BASED UPON THEIR FAILURE
            TO INTERCEDE ............................................................................................ 17

IV.    SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S FAIR TRIAL
       CLAIM ...................................................................................................................... 19

       A.   FORWARDING FALSE EVIDENCE TO PROSECUTORS VIOLATES THE
            ACCUSED'S RIGHT TO A FAIR TRIAL AND IS ACTIONABLE UNDER 42
            U.S.C. § 1983 ............................................................................................... 19

       B.   THERE IS A MATERIAL FACTUAL DISPUTE AS TO WHETHER OR NOT
            P.O. SALIM FABRICATED EVIDENCE AGAINST PLAINTIFF ................. 20

       C.   THERE IS AMPLE EVIDENCE IN THE RECORD TO SUPPORT
            PLAINTIFF'S FABRICATION CLAIM ........................................................... 21

V.     SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S MALICIOUS
       ABUSE OF PROCESS CLAIM .................................................................................. 23

       A.   THE FACTUAL DISPUTE OVER FABRICATED EVIDENCE PRECLUDES
            SUMMARY JUDGMENT ................................................................................ 23

VI.    SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S MONELL CLAIM
       AGAINST THE CITY OF NEW YORK ..................................................................... 23

       A.   TWO INDEPENDENT STUDIES SUPPORT PLAINTIFF'S CLAIM THAT
            THE CITY OF NEW YORK HAS AN UNLAWFUL PATTERN AND
            PRACTICE OF DISPROPORTIONATELY STOPPING AFRICAN-
            AMERICAN MALES ...................................................................................... 23

CONCLUSION .................................................................................................................. 25

## TABLE OF AUTHORITIES                                                PAGE

Anderson v. Liberty Lobby, Inc.,477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Anderson v. Branon, 17 F.3d 552 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Baez v. Jet Blue Airways, No. 09-Civ-596, 2009 U.S. Dist. LEXIS 67426
     (E.D.N.Y. July 29, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Binder v. Long Island Lighting Co. 933 F.2d 187 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . 5

Brady v. Town of Colchester, 363 F.2d 205 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Bradford Trust Co. v. Merrill Lynch, 805 F.2d 49 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . 25

Brome v. City of New York, No. 02 Civ 7184, 2004 U.S. Dist. LEXIS 3943
     (S.D.N.Y. Mar. 15, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 21

Chimurenga v. City of New York, 45 F. Supp.2d 337 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . 14, 15

Cruz v. Kennedy, 97-CV-4001, 1997 U.S. Dist LEXIS 23012
     (S.D.N.Y. Dec. 17, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Douglas v. City of New York, 595 F.Supp.2d 333 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . 17, 19

Fischl v. Armitage, 128 F.3d 50 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Funnye v. City of New York, No. 98 Civ 7731, 2001 U.S. Dist. LEXIS 3337, * 3
     (S.D.N.Y. March 27, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

Gentile v. County of Suffolk, 926 F.2d. 142 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

Henry v. City of New York, No.02 Civ.4824, 2003 U.S.  Dist. LEXIS 15699
     (S.D.N.Y. September 5, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 23

Hernandez v. City of New York, No. 01 Civ. 4376, 2003 U.S. Dist. LEXIS 21146
     (S.D.N.Y. Nov. 18, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Howard v. Schoberle, 907 F. Supp. 671 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Jovanovic v. City New York, 04 Civ.8437, 2006 U.S.  Dist. LEXIS 59165
     (S.D.N.Y. Aug. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

King v. Conde, 121 F.R.D. 180 (E.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Lee v. City of New York, 00 Civ. 3181, 2002 U.S. Dist. LEXIS 13696
(E.D.N.Y. July 22, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Miranda-Ortiz v. Demig, No. 94 Civ. 476, 1998 U.S. Dist. LEXIS 17147
(S.D.N.Y. Oct. 29, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Monell v. Dep't of Social Services, 436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Morillo v. City of New York, No. 95 Civ. 2176, 1997 U.S. Dist LEXIS 1665
(S.D.N.Y. Feb. 19, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Murphy v. Lynn, 118 F.3d 938 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Myers v. Phillips, 04 CV 4365, 2007 U.S. Dist. LEXIS 57496
(E.D.N.Y. Aug. 7, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Oliveira v. Mayer, 23 F.3d 642 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Parkin v. Cornell University, 78 N.Y.2d 523 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Posr v. Doherty, 944 F.2d 91 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Richardson v. City of New York, No. 02 Civ. 3651, 2006 U.S. Dist. LEXIS 69577
(E.D.N.Y. Sept. 27, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 21

Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 131 (2d Cir. 1996) . . . . . . . . . . . . . . 15, 19, 24

Rueda v. Kreth, No. 01 Civ. 2819, 2005 U.S. Dist. LEXIS 4404
(E.D.N.Y. Feb 7, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Sorlucco v. New York City Police Dept. , 971 F.2d 864 (2d Cir. 1992) . . . . . . . . . . . . . . . . . 24

Stewart  v. City of New York, No. 06 Civ. 15490, 2008 U.S. Dist. LEXIS 30632
(S.D.N.Y. April 8, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Sutton v. Duguid, No. 05 Civ. 1215, 2007 U.S. Dist. LEXIS 35853
(E.D.N.Y. May 16, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Taylor v. City of New York, 269 F. Supp. 68 (E.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . 10, 22

Taylor v. City of New York, 03 Civ. 6477, 2006 U.S. Dist. LEXIS 41429
(S.D.N.Y. June 21, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 19, 21, 25

Travis v. Village of Dobbs Ferry, 335 F. Supp. 2d 740 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . 18

United States v. Levy, 731 F.2d 997 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Moreno, 897 F.2d 26 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Rem, 38 F.3d 634 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Tehrani, 49 F.3d 54 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Vann v. City of New York, 72 F.3d. 1040 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

Woodward v. City of New York, 99 Civ. 1123, 2000 U.S. Dist. LEXIS 5231
(E.D.N.Y. March 10, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Wu v. City of New York, 934 F.Supp. 581 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 6, 15

Williams v. City of New York, 05 Civ. 10230, 2007 U.S. Dist. LEXIS 55654
(July 27, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Williams v. Smith, 781 F.2d 319 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Zahrey v. Coffey, 221F.3d 342 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## PRELIMINARY STATEMENT

Plaintiff Frank Brandon  respectfully submits this Memorandum of Law in opposition to defendants' motion for summary judgment. Defendants' motion must be denied because the parties have given markedly different versions of the events which took place on September 3, 2006. According to P.O. Salim, he observed plaintiff tossing a plastic bag as he approached plaintiff from behind, and this plastic bag contained crack cocaine.  According to plaintiff, he did *not* throw away a bag of drugs, or any other bag for that matter, at any time during his encounter with the police on September 3, 2006.  Since the parties have given sharply conflicting accounts about what took place on September 3, 2006 – and since the determination of probable cause depends on whose version of events is credited – defendants' motion for summary judgment must be denied.

## STATEMENT OF FACTS

The parties have given sharply conflicting testimony about the events which led up to plaintiff's arrest on September 3, 2006. Therefore, it is necessary to set forth each party's version of events separately.

### Plaintiff's Version of Events

On September 3, 2006, at approximately 2:45 a.m., plaintiff Frank Brandon  was walking in the vicinity of 131st Street and 132nd Street in Manhattan.  See Deposition Transcript of Frank Brandon ("Brandon Dep."), annexed to the Declaration of Jon L. Norinsberg ("Norinsberg Decl."), Ex. A, at 28.   At the time, Mr. Brandon, who lived at 256 West 132nd Street, was heading toward a bodega located on the corner of 7th Avenue and 132nd Street, in Manhattan. (Id. at 7; 47).  Mr. Brandon was planning on purchasing some pampers for his infant son, as well as some cigarettes for himself. (Brandon Dep. at 42; 43).

-1-

On the way to the store, Mr. Brandon recognized three acquaintances whom he knew from the neighborhood. (Id. at 51) Mr. Brandon and the three acquaintances greeted each other with handshakes and a brief verbal exchange (Id. at 54; 55). Thereafter, the other men walked off toward the bodega, with Mr. Brandon walking behind them. (Id. at 55; 58). As the men were walking toward the bodega, an unmarked police car approached them and two officers suddenly got out of the vehicle. One of the officers asked the group: "hey, how you guys doing?" (Id. at 55). The officers did not say "stop," "halt" or "freeze" (Id. at 55; 59). Mr. Brandon did not answer the officers but instead kept walking toward the bodega. (Id. at 55; 61).

At this point, one of the officers kept yelling at him "hey" and "hey you." When Mr. Brandon turned around to see who was calling him, he was immediately "football tackled" by one of the officers (P.O. Stambuk) and thrown to the ground. (Id. at 56). Plaintiff was then searched by the officers, who found no drugs and no contraband in his possession. (Id. at 56). The officers then picked Mr. Brandon up and searched him again, but still found nothing. (Id at 56).

*After* plaintiff had already been tackled and then thrown to the ground, and *after* he had already been searched twice, Mr. Brandon heard P.O. Salim yell "Charlie." (Id. at 69, 70,71, 72). At this point, plaintiff was then placed into handcuffs and charged with criminal possession of a controlled substance. At no time on September 3, 2006 did Mr. Brandon ever possess any drugs, or throw away a plastic bag of drugs, or any other bag, during his encounter with the police. (Brandon Dep. at 95). Plaintiff Frank Brandon spent approximately three (3) months in jail before the charges were dismissed. **Defendant P.O. Said Salim's Version of Events**

On September 3, 2006, at approximately 2:45 a.m., P.O. Salim was the operator of an unmarked police vehicle heading southbound on Seventh Avenue, at 132 Street. See Deposition

Transcript of P.O. Said Salim ("Salim Dep."), Norinsberg Decl., Ex. B., at 17. At that time, P.O. Salim observed a group of approximately four to five individuals on the west side of the street. (Id. at 18, 19). The group was walking northbound towards 132nd Street. (Id. at 21). As P.O. Salim looked at the group, he observed one of the males making furtive movements toward his front waistband. (Id. at 19, 20).[1]  Based on these furtive movements, P.O. Salim believed that this individual had a firearm. (Id. at 25).  P.O. Salim then alerted the other officers in the group, P.O. Stambuk and P.O. Klausner. (Id. at 26).  The two officers exited the vehicle first, while P.O. Salim continued to drive the vehicle southbound for an additional five to seven feet. (Id. at 26, 27, 28). P.O. Salim then exited the vehicle as well. (Id. at 28).

Officers Stambuk and Klausner approached the group from the front. (Id. at 28). P.O. Salim approached the group from behind. (Id. at 32)   As P.O. Salim was walking toward the group from behind, he observed Frank Brandon take a few steps back and toss an object toward the left side of the street. (Id. at 32, 33, 34).   He proceeded to pick up the object and realized it was a controlled substance. (Id. at 38, 39, 40). He then looked toward the other officers, pointed to Frank Brandon, and informed them that the police had a "Charlie", which is an arrest. (Id. at 40).  P.O. Stambuk then tackled Frank Brandon and placed him under arrest. (Id. at 45).

## P.O. Stambuk and P.O. Klausner's Version of Events

Officers Stambuk and Klausner directly contradict P.O. Salim's version of events. Officers Stambuk and Klausner did *not* see plaintiff ever possess or throw any plastic bag on the night of the subject incident. See Deposition Transcript of P.O. Andros Stambuk ("Stambuk Dep."), Norinsberg

---

[1] This individual was *not* Frank Brandon.  (Sulin Dep. at 20)

Decl., Ex. C., at 40; P.O. Stambuk's Wade Hearing Transcript ("Stambuk <u>Wade</u> Transcript"),

Norinsberg Decl. Ex. D, at 222; Deposition Transcript of Marc Klausner ("Klausner Dep."),

Norinsberg Decl. Ex. E, at 77). Moreover, Officers Stambuk and Klausner were *not* told the reasons

for the arrest of plaintiff Frank Brandon at the scene of the arrest. (Stambuk <u>Wade</u> Transcript at 200,

215, 216; Klausner Dep. at 73). <u>See also</u> P.O. Klausner's <u>Wade</u> Hearing Transcript ("Klausner

Wade Transccript"), Norinsberg Decl., Ex. F, at 200). Rather, it was not until they were heading

back toward the precinct that P.O. Salim first told them the reason for plaintiff's arrest. (Stambuk

Wade Transcript at 215, 216)

**The District Attorney's Office Recommends Dismissal Because of "Issues of Credibility" Concerning P.O. Salim's "Implausible" Testimony**

After hearing testimony from all three officers at the <u>Wade</u> hearing, ADA Adrian Rosales

submitted a Recommendation for Dismissal of all criminal charges. (Norinsberg Decl., Ex. G).

ADA Rosales recommended dismissal of the criminal charges because of "*issues of credibility*

regarding police officer Salim's testimony ...." (emphasis supplied). Specifically, ADA Rosales

stated that "Police officer Salim's version of events leading to the arrest of the defendant was later

contradicted by the testimony of his fellow officers, clearly making Officer Salim's version of events

*implausible*." (Norinsberg Decl., Ex. G; Rosales Dep. at 18) (emphasis supplied). Thus, the

prosecution "could not present credible evidence" in support of its claims. (<u>Id</u>.). As a result of ADA

Rosales' recommendation, all criminal charges against plaintiff were dismissed.

## STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment "may not be granted unless the court determines that there

is no genuine issue of material fact and that the undisputed facts warrant judgment for the moving

party as a matter of law." <u>Howard v. Schoberle</u>, 907 F. Supp. 671, 676 (S.D.N.Y. 1995). In determining whether summary judgment is appropriate, "a court must resolve all ambiguities and draw all reasonable inferences against the moving party." <u>Funnye v. City of New York</u>, No. 98 Civ 7731, 2001 U.S. Dist. LEXIS 3337, * 3 (S.D.N.Y. March 27, 2001). "If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." <u>Howard</u>, 907 F. Supp. at 677 (citing <u>Chambers v. TRM Copy Centers Corp.</u>, 43 F.3d 29, 37 (2d Cir. 1994)). As a rule, "credibility assessments, choices between conflicting versions of events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." <u>Fischl v. Armitage</u>, 128 F.3d 50, 55 (2d Cir. 1997). <u>See also</u> <u>United States v. Rem</u>, 38 F.3d 634, 644 (2d Cir. 1994) (same). In deciding a summary judgment motion, "[t]he District Court is not to weigh evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party and to eschew credibility assessments." <u>Weyant v. Okst</u>, 101 F.3d 845, 854 (2d Cir. 1996). "[A]ll doubts as to the existence of a genuine issue for trial should be resolved against the moving party." <u>Brady v. Town of Colchester</u>, 363 F.2d 205, 210 (2d Cir. 1988)(citing <u>Binder v. Long Island Lighting Co.</u> 933 F.2d 187, 191 (2d Cir. 1991)). Summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>,477 U.S. 242, 248 (1986).

**ARGUMENT**

**I.    SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S FALSE ARREST CLAIM.**

**A.    The Parties Have Given Markedly Different Testimony About The Events Which Led Up To Plaintiff's Arrest.**

It is well-settled that "[w]here the question of whether an arresting officer had probable cause is predominantly factual in nature, as where there is a dispute as to the pertinent events, the existence vel non of probable cause is to be decided by the jury." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997). Accord  Weyant v. Okst, 101 F.3d 845, 854 (2d  Cir. 1996) ("The weighing of the evidence and the determination as to which version of the events to accept are matters for the jury."); Wu v. City of New York, 934 F.Supp. 581, 588 (S.D.N.Y. 1996) ("Where the defense of probable cause is based on conflicting evidence, the question is resolved by the jury."); Parkin v. Cornell University, 78 N.Y.2d 523, 529 (1991) (probable cause can be decided by the court "only where there is no real dispute as to the facts or the proper inferences to be drawn from such facts").

In this case, there is a sharp factual dispute between the parties as to the events which took place on  September 3, 2006 . According to P.O. Salim, he observed plaintiff tossing a plastic bag as he approached plaintiff from behind, and this plastic bag contained crack cocaine.  (Salim Dep. at 32, 33, 34, 38, 39, 40). According to plaintiff, he did *not* throw away a bag of drugs, or any other bag for that matter, at any time during his encounter with the police on September 3, 2006. (Brandon Dep. at 95). Thus, the parties have given markedly different testimony about the events which led up to plaintiff's arrest.[2]  Under such circumstances, summary judgment must be denied.  See

---

[2]Defendants acknowledge that "plaintiff disputes that he tossed the plastic bag" (Def. Mem at 2) and that "plaintiff denies ever possessing the crack cocaine recovered" (Def. Mem. at

Murphy, at 118 F.3d 947 (Where "the events were sharply disputed, the issue of probable cause was properly put to the jury, and the decision as to whose version to credit was entirely within the province of the jury."); Weyant, 101 F.3d at 854 ("The district court was not entitled, on a motion for summary judgment, to credit [defendants'] version of the facts and enter judgment based on his own view that their version was more likely true"). See also Williams v. City of New York, 05 Civ. 10230, 2007 U.S. Dist. LEXIS 55654 *11 (July 27, 2007) ("[plaintiff] asserts that he was never in possession of marijuana on May 24, 2004. Because the existence of probable cause turns on disputed issues of fact, the issue of probable cause is not amenable to disposition by summary judgment."); Richardson v. City of New York, No. 02 Civ. 3651, 2006 U.S. Dist. LEXIS 69577, * 11 (E.D.N.Y. Sept. 27, 2005) ("At this stage, [plaintiff] is entitled both to have his testimony believed and to have all reasonable inferences that can be drawn therefrom made in his favor. And if UC # 7404 either fabricated a drug sale or knowingly made a false identification of [plaintiff] as a seller, causing his arrest, then [plaintiff] has a false arrest claim against her"); Taylor v. City of New York, 03 Civ. 6477, 2006 U.S. Dist. LEXIS 41429, at * 4 (S.D.N.Y. June 21, 2006) ("if the Court accepts plaintiff's version of events, plaintiff ... possessed no drugs [and therefore] the arrest was not justified").

In their moving papers, however, defendants have wholly failed to address – much less acknowledge – the sharp factual disputes which exist in this case. Rather, defendants have presented only P.O. Salim's version of events, and have asked the Court to simply accept this account as true, without considering any of plaintiff's testimony. See, e.g., Def. Mem. at 18 (arguing that probable cause exists because Officer Salim "observed [plaintiff] tossing a plastic bag" – despite plaintiff's

18), yet they still insist that there are *no* material factual disputes in this case.

sworn testimony to the contrary.) This same tactic was tried, and rejected, in <u>Funnye v. City of New York</u>, No. 98 Civ. 7731, 2001 U.S. Dist. LEXIS 3337 *16 (S.D.N.Y. March 27, 2001).  As the court in <u>Funnye</u> explained, in language which is equally applicable here:

> The flaw in the City defendants' argument, however, is that it requires the Court to accept the accounts of the events on the day in question as given by defendants...But those accounts are disputed by plaintiff and contain various internal conflicts. Moreover, defendants's accounts lack any corroboration. There are plainly issues of fact as to whether there was probable cause to arrest the plaintiff and those issues cannot be resolved on this motion for summary judgment.

<u>Funnye</u>, 2001 U.S. Dist. Lexis 3337, at * 16.

Since the parties have given sharply conflicting testimony on whether or not plaintiff tossed away a bag of drugs on September 3, 2006 – and since P.O. Salim's version of events is further contradicted by the testimony of officers Stambuk and Klausner – there are material factual disputes which preclude summary judgment on plaintiff's false arrest claim. Accordingly, defendants' motion must be denied.

### B.    The Jury Must Decide Whether Or Not Plaintiff's Investigatory Stop Ripened Into A *De Facto* Arrest When He Was Tackled By P.O. Stambuk.

Apart from the lawfulness of P.O. Salim's arrest, there is a separate question of whether or not the actions taken by P.O. Stambuk – in tackling plaintiff onto the ground *prior* to learning the basis for his detention – constitutes a *de facto* arrest which would subject P.O. Stambuk to liability. The Second Circuit has repeatedly held that the question of whether an investigatory stop has ripened into an arrest is a question of fact for the jury. <u>See, e.g.,</u> <u>United States v. Tehrani</u>, 49 F.3d 54, 57 (2d Cir. 1995) ("at what point a permissible investigative detention ripens into an arrest is a question of fact."); <u>Oliveira v. Mayer,</u> 23 F.3d 642, 645 (2d Cir. 1994) ("In a Section 1983 action, it would usually be a jury's task to decide whether a detention amounted to a *de facto* arrest");<u>Posr v.</u>

<u>Doherty</u>, 944 F.2d 91, 98 (2d Cir. 1991) ("the issue of precisely when an arrest takes place is a question of fact.").

In this case, plaintiff has testified that he was immediately tackled as soon as he turned around to see who was calling at him. (Brandon Dep. at 56) Without question, such testimony is sufficient to conclude that plaintiff was subjected to *de facto* arrest. See <u>United States v. Moreno</u>, 897 F.2d 26, 31 (2d Cir. 1990) (arrest occurred when officer "pushed [defendant] against the wall and told him not to move"); <u>United States v. Levy</u>, 731 F.2d 997, 999 (2d Cir. 1984) (arrest occurred when suspect was ordered to "freeze" and was forced to stand spread-eagle against a wall). At the very least, plaintiff's testimony raises a factual question as to whether or not P.O. Stambuks' actions ripened into an unlawful arrest. See <u>Lee v. City of New York</u>, 00 Civ. 3181, 2002 U.S. Dist. LEXIS 13696 * 21 (E.D.N.Y. July 22, 2002) ("Because the parties present conflicting accounts of the detention, the issue of whether [plaintiff] was subjected to an arrest must go to the jury.") Accordingly, defendants' motion for summary judgment must be denied.

**II.    SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S MALICIOUS PROSECUTION CLAIM.**

**A.    There Is A Material Factual Dispute As To Whether Or Not P.O. Salim Testified Falsely Before The Grand Jury.**

Defendants argue that the presumption created by the Grand Jury indictment defeats plaintiff's malicious prosecution claim (Def. Mem. at 5-7). However, if plaintiff's testimony is accepted as true – which it *must* be for purposes of this motion – then a jury could conclude that P.O. Salim <u>lied</u> to the Grand Jury when he testified about observing plaintiff toss away a bag of drugs. See <u>Stewart v. City of New York</u>, No. 06 Civ. 15490, 2008 U.S. Dist. LEXIS 30632 , *24 (S.D.N.Y. April 8, 2008) ("if a jury chooses to credit [plaintiff] rather than [defendant], it could find

that [defendant] lied when he told the district attorney's office and the grand jury that [plaintiff] acted as a lookout."); Sutton v. Duguid, No. 05 Civ. 1215, 2007 U.S. Dist. LEXIS 35853, *34-35 (E.D.N.Y. May 16, 2007) ("if plaintiff's version of the events is taken as true – that is that [defendant] did not announce himself as an officer, but told the grand jury that he did – a jury could reasonably conclude that the indictment was secured through bad faith or perjury ... thus there is a disputed issue of fact regarding whether false testimony was given to the grand jury, such that summary judgment is unwarranted."); Taylor v. City of New York, 269 F. Supp 2d at 74 (2007) ("If the trier of fact were to credit plaintiff's version of events, he or she could find that the police witnesses had perjured themselves or otherwise testified untruthfully before the grand jury."); Brome v. City of New York, No. 02 Civ. 7184, 2004 U.S. Dist. LEXIS 3943, * 18 (S.D.N.Y. Mar. 15, 2004) ("[B]ecause a question fact exists as to [the defendant's] account of the events leading up to plaintiff's [drug] arrest ... plaintiff has created a triable issue of fact to rebut both the presumption of an independent prosecutorial decision and the presumption arising from the indictment." ). Accordingly, defendants' motion for summary judgment must be denied.

> **B.    P.O. Salim's Grand Jury Testimony Is Admissible And Should Be Considered By The Court.**

It is undisputed that P.O. Salim testified before the grand jury regarding the arrest of Frank Brandon. (Salim Dep. at 31). In his grand jury testimony, P.O. Salim repeatedly claimed that he had observed plaintiff drop a plastic bag prior to his arrest. See Grand Jury Transcript of P.O. Salim ("Grand Jury"), Norinsberg Decl., Ex. I, at 50, 52, 53 ( "I did observe the defendant drop the bag", "[I] observed him from his left hand drop the bag", "I observed him take two to three steps backwards, with his left hand drop the bag.")  Further, P.O. Salim testified that he was "absolutely"

-10-

certain that the bag he found was the one dropped by Frank Brandon, since he "kept his eye on the bag" the whole time. (Id. at 51).

Without question, such testimony – which directly contradicts the testimony of plaintiff, P.O. Stambuk and P.O. Klausner – creates a factual dispute sufficient to overcome the grand jury presumption. See McClellan v. Smith, 439 F.3d 137, 148 (2d Cir. 2006) (denying summary judgement on plaintiff's malicious prosecution claim where plaintiff's testimony contradicted that of defendant, and where there were inconsistencies in defendant's version of events). Yet, defendants now seek to exclude this grand jury testimony on the ground that it is "inadmissible" and should not be considered by the Court. (Def. Mem. at 7-8). This argument, however, is completely without merit.

First, "it should be emphasized that New York State law does *not* govern discoverability and confidentiality in federal civil rights actions." Woodward v. City of New York, 99 Civ. 1123, 2000 U.S. Dist. LEXIS 5231, at *8 (E.D.N.Y. March 10, 2000) (emphasis supplied). Thus, "although New York preserves the secrecy of its grand jury by statute ... that statute does not control this action." (Id.) Myers v. Phillips, 04 CV 4365, 2007 U.S. Dist. LEXIS 57496, * 4 (E.D.N.Y. Aug. 7, 2007) (emphasis supplied) . Indeed, while the State has a legitimate interest in protecting grand jury secrecy, this interest "cannot be permitted 'to frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as embodied in section 1983." Cruz v. Kennedy, 97-CV-4001, 1997 U.S. Dist LEXIS 23012, at * 5 (S.D.N.Y. Dec. 17, 1997),(quoting King v. Conde, 121 F.R.D. 180, 187 (E.D.N.Y. 1988)) (internal citations omitted). Thus, New York State's rules regarding grand jury secrecy *cannot* – as defendants argue – preclude plaintiff from using P.O. Salims' grand jury testimony in this civil

-11-

rights action.[3]

### i.   P.O. Salim's Deposition Testimony Independently Establishes His False Testimony Before The Grand Jury.

Even assuming, *arguendo*, that the grand jury transcripts were not admissible on this motion,

P.O. Salim's *own deposition testimony* would be sufficient to raise an issue of fact as to whether or

not he testified falsely in front of the grand jury.  Indeed, at his deposition, P.O. Salim specifically

testified that he had given the *same testimony* in front of the grand jury – i.e., observing Frank

Brandon tossing a plastic bag that contained drugs – that he gave at his deposition. (Salim Dep. at

93).  Thus, based solely on P.O. Salim's deposition testimony, there is sufficient evidence in the

record to overcome the grand jury presumption. See Boyd v. City of New York, 336 F.3d 72, 76 (2d

Cir. 2003) (conflict between plaintiff's deposition testimony and defendants' deposition testimony

regarding location of arrest was sufficient to overcome grand jury presumption and defeat summary

judgment on malicious prosecution claim).  Accordingly, defendants' motion must be denied.

### ii.   The Parties Never Entered Into An Agreement Regarding The Use of Grand Jury Minutes In This Action.

Defendants further argue that P.O. Salim's grand jury minutes should not be considered

because plaintiff agreed that he would not attempt to use them in support of his case.  (Def. Mem.

at   8).  This claim, however,  is patently  untrue. As the attached e-mails  make clear, there was

---

[3]Furthermore, none of the traditional reasons for grand jury secrecy are implicated in this case.  See Myers, 2007 U.S. Dist. LEXIS 57496 ( "[i]t is hardly necessary to review most of these factors, as virtually none of them is even arguably applicable here." Myers, 2007 U.S. Dist. LEXIS 57496, *10). Indeed, plaintiff's "grand jury proceeding and trial are over.  Disclosure of the testimony will not facilitate any "escape", will not cause anyone to "importune" grand jurors, will not affect the incentive for witnesses to testify before future grand juries, and will not protect [plaintiff's'] name. (Id.) In short, none of the factors which militate in favor of grand jury secrecy are present here." (Id.)

never any discussion – much less an *agreement* – that plaintiff "would not seek to use the grand jury transcripts in support of his case." (Id.) Rather, the only discussion between the parties was whether or not defendants could delay depositions – as they had already done for several months – on the newly raised issue of grand jury transcripts. (Id.). Defense counsel had *never raised this issue* prior to September 10, 2008, the week before depositions were scheduled to be held.  Thus, plaintiff's counsel strenuously objected to this last-minute attempt at delaying depositions any further:

> Moreover, this is NOT an acceptable basis for failing to produce your officers for depositions. You have had over six months to acquire these records on your own and you failed to do so.  You have also never raised this issue as a "condition" for depositions until the past week.  Therefore, among other things, this requested is untimely and absolutely not a sufficient ground for delaying depositions any further. I will not accept any further delays.  Please let me know what dates your officers are available for depositions.  If you don't agree to produce them voluntarily, *I will have no choice but to file a motion with the Court*.
>
> Please advise as soon as possible.

Stavridis Decl, Ex. G (emphasis supplied

Rather than face a motion to compel – which would have necessarily brought this issue to the Court's attention – defense counsel elected to produce the officers.  See Stavridis Decl, Ex. G ("so long as I have your good word that neither you nor your client have the GJ transcripts, and will not have them at any time *prior* to the officers' depositions, I will produce the officers.")(emphasis supplied) As the plain language of this exchange make clear,  there was never any discussion – much less an *agreement* – that plaintiff "would not attempt to use [the grand jury transcripts] in support of his case." (Def. Mem. at 8).  Therefore, defendants' claim that they "relied on" such a representation "in agreeing to go forward" is entirely without merit, and should

-13-

and should be rejected by the Court.[4] (Id.)

## C.    P .O. Salim's False Statements to ADA Rosales Provide A Separate Basis For Plaintiff's Malicious Prosecution Claim.

Apart from testifying falsely before the Grand Jury, P.O. Salim also passed along false evidence to ADA Rosales in the Manhattan District Attorney's Office.  See Def. 56.1 Statement, ¶ 7 ( "ADA Rosales testified that plaintiff's prosecution was based on facts and documents provided by P.O. Salim"; Rosales Dep. at 58).   The act of forwarding such false evidence to prosecutors is -- by itself – sufficient to defeat defendants' motion for summary judgment on plaintiff's malicious prosecution claim.  See Richardson v. City of New York, No. 02 CV 3651, 2006 U.S. Dist. LEXIS 69577, at *11 ("It is undisputed that defendants passed that [allegedly fabricated] evidence along to the Queens County District Attorney's office, and that as a result [plaintiff] was indicted and prosecuted.  Those facts make out a malicious prosecution claim ...."); Chimurenga v. City of New York, 45 F. Supp.2d 337, 343 (S.D.N.Y. 1999)("[w]here a party is responsible for providing false information or manufactured evidence that influences a decision whether to prosecute, he may be held liable for malicious prosecution.").  Since it is undisputed that  P.O. Salim told ADA Rosales that he  observed plaintiff toss away a plastic bag of drugs – and since a jury could reasonably conclude that this claim was *false* and intended to mislead the prosecutor –  P.O. Salim can be held liable for malicious prosecution.   See Rueda v. Kreth, No. 01 Civ. 2819, 2005 U.S. Dist. LEXIS 4404, *24  (E.D.N.Y. Feb 7, 2005) ( denying summary judgment on malicious prosecution claim

---

[4]In any event, it must be emphasized that plaintiff's counsel did *not* have  the grand jury minutes in September 2008. (See Staviridis Decl., Ex. G: "We do not have the grand jury transcripts, so we cannot provide them to you.").  When plaintiff's counsel finally obtained a copy of these minutes  in December 2008 –  from Mr. Brandon's criminal defense attorney, Arlen Yalkut, Esq. – he  immediately turned them over to Mr. Staviridis. (Norinsberg Decl., Ex. L).

where a " jury could reasonably believe that [defendant's] affidavit, in which he swore that the package was concealed under a bed, was false and intended to mislead a prosecutor.") Accordingly, defendants' motion for summary judgment must be denied.

> **D.    The Element of "Malice" May Be Inferred From P.O. Salim's Misconduct And From the Absence of Probable Cause.**

Lastly, defendants argue that summary judgment is warranted because plaintiff cannot establish the element of "malice." (Def. Mem. at 12-13) It would seem beyond dispute, however, that plaintiff's allegations of manufactured evidence and perjury by P.O. Salim would be sufficient to establish the element of "malice." See Morillo v. City of New York, No. 95 Civ. 2176, 1997 U.S. Dist LEXIS 1665, at *17 (S.D.N.Y. Feb. 19, 1997). Apart from this, however, it is well established that "lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 131 (2d Cir. 1996). Accord Chimurenga v. City of New York, 45 F. Supp. 337, 343 (S.D.N.Y. 1999)(where "there is a triable issue as to probable cause, there will almost always be a triable issue as to malice, since the existence of malice may be inferred from a finding that defendants lacked probable cause."); Wu v. City of New York, 934 F. Supp. at 592 ("the absence of probable cause bears on the issue of malice, and a jury may infer malice from an arrest for which probable cause was totally lacking."). Since there is a triable issue of fact as to probable cause, there is also a triable issue as to malice. Accordingly, defendants' motion for summary judgment must be denied.

## III.   THE "FELLOW OFFICER RULE" HAS NO APPLICATION TO THIS CASE, AS NEITHER P.O. STAMBUK NOR P.O. KLAUSNER WERE ACTING UPON INFORMATION PROVIDED TO THEM BY P.O. SALIM.

> **A.    Both Officers Testified That They Did Not Know The Basis For Plaintiff's Arrest Until *After* The Incident Took Place.**

-15-

Defendants acknowledge that both Officers Stambuk and Klausner "participated in arresting plaintiff." (Def. Mem. at 17).  Yet, defendants maintain that these two officers cannot be held liable because they arrested plaintiff "based on Officer Salim's telling them that he observed plaintiff tossing a plastic bag containing crack cocaine." (Id.).  This argument is flawed for several reasons. First, there is *no evidence* in the record that these defendants were acting upon information provided to them by P.O. Salim.[9]  To the contrary, the actual testimony of both officers leaves no doubt that they were *not* acting on the instructions of P.O. Salim when they participated in the arrest of plaintiff. As P.O. Stambuk testified during the Wade hearing:

> Q: So, do you know why he was indicating that the defendant should
>     be placed under arrest?
> A: *No, I did not.*
> Q: Did you come to learn that *after*?
> A: Yes.
> \*   \*   \*   \*
> Q: Did you observe – how did you know that the     defendant was     being
>     arrested for narcotics?
> A: Officer Salim *told me later* once we got everything     settled and
>     *either on our way back to the police     precinct or in the car,*
>     somewhere around there.

Stambuck Wade Transcript at 215; 216, Norinsberg Decl., Ex.  D (emphasis supplied)

As for P.O. Klausner, while he claimed to have heard Officer Salim yell "Charlie" at some point during the encounter, he admitted that he was "not 100 percent positive" whether P.O. Salim yelled this out before or after plaintiff was tackled, and he conceded that "it is possible" that this command took place *after* the tackle. (Id. at  200).  Further, he claimed that the reason that plaintiff

---

[9] In fact, the alleged "evidence" relied upon by defendants in support of this argument – Def. Rule 56.1 Statement, ¶¶ 10-13 – does not contain *any* testimony by either P.O. Stambuk or P.O. Klausner to support the claim that they relied upon information provided by P.O. Salim in placing plaintiff under arrest.

was tackled was because plaintiff still had "his hand in his right pocket and from my experience, usually from my experience, it's usual[lly] weapons or guns and *that's when Officer Stambuk charged him and tackled him.*" In other words, P.O. Klausner did *not* testify that he was acting upon "Officer Salim's telling them that he observed plaintiff tossing a plastic bag containing crack cocaine", as defendants have claimed in their moving papers. (Def. Mem. at 17).    Therefore, the "fellow officer rule" has no application to this case.

**B.    Both Officers Can Be Held Liable Based Upon Their Failure To Intercede**.

Under the law of this Circuit, police officers may be held liable for failing to intercede to prevent a violation of an individual's constitutional rights. See Anderson v. Branon, 17 F.3d 552, 557 (2d Cir. 1994). As the Second Circuit explained in Anderson:

> It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know ... that any constitutional violation has been committed by a law enforcement official.

Anderson, 17 F.3d  at 557 (internal citations and quotations omitted).  See also Douglas v. City of New York, 595 F.Supp.2d 333, 345 (S.D.N.Y. 2009) ("Courts in this Circuit have, however, permitted § 1983 claims to proceed where an individual officer merely failed to intervene to prevent a violation of a person's constitutional rights."); Travis v. Village of Dobbs Ferry, 335 F. Supp. 2d 740, 752 (S.D.N.Y. 2005) (officer can be liable for failing to stop another officer's violation of person's Fourth Amendment rights).

In this case, defendants concede that "Officers Stambuk and Klausner did not observe plaintiff possess or throw the plastic bag containing the crack-cocaine." Def. Rule 56.1 Statement,

¶ 11. Yet, both officers still "participated in arresting plaintiff" (Def. Mem. at 17), and allowed him to be brought to the precinct without obtaining any further information from P.O. Salim as to the reason for the arrest.[10] Given these facts, it is up to a jury to decide whether or not defendants failed to intervene to protect the constitutional rights of plaintiff. See Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) (holding that, in context of a § 1983 claim, "personal involvement is a question of fact"); Anderson, 17 F.3d at 557 ("Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise."); Douglas, 595 F. Supp. 2d at 345 ("Whether an officer was personally involved in a constitutional violation, or whether he can be held liable on a failure to intervene theory, is generally a question of fact for the jury to decide."). Accordingly, defendants' motion for summary judgment on behalf of P.O. Stambuk and P.O. Klausner must be denied.

---

[10]This fact clearly troubled Judge Hayes at the Wade Hearing, as the following exchange reveals:

> Q:   But, right there at the scene, or you know, putting the defendant in the car, Salim doesn't say to you or *you don't ask him, hey, we're putting him in the car, what are we taking him for there's no guns, no discussion like that at all*?
>
> A:   I really can't recall. I want to say, first mention was in the car, but I could be mistaken Your Honor, but like I said, it all happened pretty quick.

Klausner Wade Transcript at 219-220 (emphasis supplied).

**IV.   SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S FAIR TRIAL CLAIM.**

**A.   Forwarding False Evidence To Prosecutors Violates The Accused's Right To A Fair Trial And Is Actionable Under 42 U.S.C. § 1983.**

The Second Circuit has repeatedly held that when a police officer supplies false information to a prosecutor, the officer has violated the criminal defendant's right to a fair trial, and such unlawful conduct gives rise to an action under 42 U.S. C. § 1983.  See  Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123,130 (2d Cir. 1997) ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S. C. § 1983."); Jocks v. Tavernier, 316 F.3d 128, 138 (2d Cir. 2003) (quoting Ricciuti and clarifying that this is true even where officers have probable cause to arrest); Zahrey v. Coffey, 221F.3d 342, 355 (2d Cir. 2000)("It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer").

Following the lead of the Second Circuit, many district courts have now expressly recognized "fair trial" claims under 42 U.S. C. § 1983. See, e.g., Taylor v. City of New York, No. 03 Civ. 6477, 2006 U.S. Dist. LEXIS 41429, * 14 (S.D.N.Y. June 19, 2006) ("when an officer gives false information about an arrestee to prosecutors, he violates the arrestee's right to a fair trial."); Henry v. City of New York, No.02 Civ.4824, 2003 U.S. Dist. LEXIS 15699, at * 12 (S.D.N.Y. September 5, 2003) ( "while there is no constitutional right to be free from having evidence fabricated against an individual, the offense rises to a constitutional violation if one is deprived of his liberty because of the fabrication.").  Further, courts have expressly recognized that a fair trial

-19-

claim is separate and distinct from a malicious prosecution claim. See, e.g., Baez v. Jet Blue Airways, No. 09-Civ-596, 2009 U.S. Dist. LEXIS 67426, at * 35 (fn. 18) (E.D.N.Y. July 29, 2009)("district courts within the Second Circuit have treated fair trial and malicious prosecution as separate claims for purposes of summary judgment or 12(b)(6) motions"); Jovanovic v. City New York, 04 Civ.8437, 2006 U.S. Dist. LEXIS 59165, * 37 (S.D.N.Y. Aug. 2006)( "Plaintiff may legitimately bring both [a fair trial claim and a malicious prosecution claim]" based upon defendant's alleged fabrication of evidence). Thus, there can be no doubt that a "fair trial" claim is actionable under Section 1983.

### B.   There Is A Material  Factual Dispute As To Whether Or Not P.O. Salim Fabricated Evidence Against Plaintiff.

In this case, the parties have given directly conflicting testimony as to whether or not plaintiff tossed away a plastic bag of drugs prior to his arrest. Such a conflict in testimony is, by itself, sufficient to raise a triable issue of fact as to whether or not P.O. Salim fabricated drug evidence against plaintiff. See Williams v. City of New York, 05 Civ. 10230, 2007 U.S. Dist. LEXIS 55654 *40 (S.D.N.Y. July 27, 2007) ("[Plaintiff] alleges that the officers fabricated evidence in order to charge him with the drug possession ... While [plaintiff] chiefly relies on his own testimony to support allegations, 'credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgement.'") (citations omitted); Richardson v. City of New York, No. 02 Civ. 3651, 2006 U.S. Dist. LEXIS 69577, * 11 (E.D.N.Y. Sept. 27, 2005) ( "Taking [plaintiff's] version of the facts as true, a jury could reasonably infer that UC # 7404 knowingly misidentified him and that [the arresting officer] fabricated the evidence that [plaintiff] was in possession of pre-recorded buy

money.") Since there is a question of fact as to whether or not P.O. Salim  fabricated evidence drug

against plaintiff,  defendants' motion for summary judgment on plaintiff's fair trial claim must be

denied. See Henry v. City of New York,  No. 02 Civ. 4824, 2003 U.S. Dist. LEXIS 15699, * 11

(S.D.N.Y.  Sept. 5, 2003) 12 ("It is a question of fact whether plaintiff's deprivation of liberty ... was

caused by the fabrication of evidence")

### C.     There Is Ample Evidence To Support Plaintiff's Fabrication Claim.

In moving to dismiss plaintiff's fair trial claim, however, defendants urge the Court – once

again –  to completely disregard plaintiff's testimony. See, e.g., Def. Mem. at 18-19 ("Though

plaintiff denies ever possessing the crack cocaine recovered, he has presented *no evidence* to refute

Officer Salim's account.") (emphasis supplied).  Apparently, defendants do not consider plaintiff's

own deposition testimony to be "evidence." This argument, however, has been repeatedly rejected

by courts in this jurisdiction. See, e.g., Taylor v. City of New York, 2006 U.S. Dist. LEXIS 41429,

* 13 (S.D.N.Y. June 19, 2006) (rejecting "defendants' claim that plaintiff's allegations of fabrication

[of drug evidence] are unsupported", since  "defendants ask the court to make an assessment of

credibility [and] such assessments are inappropriate on motion for summary judgment"); Brome v.

City of New York, No. 02 Civ. 7184, 2004 U.S. Dist. LEXIS 3943, * 9 (S.D.N.Y.  March 17, 2004)

(denying summary judgment where "plaintiff claim[ed]  that he never possessed drugs on the night

of January 19, 2001 [and] that no drugs were recovered from the scene");  Taylor v. City of New

York, 269 F. Supp. 68, 74 (E.D.N.Y. 2003) (denying summary judgment where plaintiff testified that

he did not sell drugs to an undercover officer, as this was "direct  evidence from his own testimony

under oath at deposition", and as such, was sufficient to defeat defendants' motion).  Thus, plaintiff's

own testimony in this case – which directly contradicts that of P.O. Salim– is sufficient to raise a

-21-

triable issue of fact as to whether P.O. Salim manufactured evidence against plaintiff.

Apart from plaintiff's own testimony, however, plaintiff also relies upon the testimony of P.O. Klausner and P.O. Stambuk in support of his fabrication claim. Neither of these two officers ever saw plaintiff possess or toss a plastic bag. (Stambuk Dep. at 40; Stambuk <u>Wade</u> Transcript at 222; Klausner Dep. at 77). As ADA Rosales stated, "Police officer Salim's version of events leading to the arrest of the defendant was later contradicted by the testimony of his fellow officers, *clearly making Officer Salim's version of events implausible.*" (Norinsberg Decl., Ex. G; Rosales Dep. at 18). Given this discrepancy in testimony, a jury could well choose to credit P.O. Klausner and P.O. Stambuk's testimony – and reject P.O. Salim's testimony – and thus conclude that plaintiff did *not* toss away a plastic bag of drugs prior to his arrest.

Finally, defendants' suggestion that Officer Salim might have simply been "mistaken" in his observations about plaintiff (Def. Mem. at 19) – and thus not responsible for fabricating evidence – is directly contradicted by P.O. Salim's own sworn deposition testimony:

> Q: Are you sure you saw him throw an object?
> A: I am *100 percent sure* I saw him thrown an object

Salim Dep. at 34 (emphasis supplied).

Thus, there is no basis whatsoever for defendants' claim that Officer Salim may have been "mistaken in his observation" or that he simply "mistook plaintiff with one of the other males present at the scene." (Def. Mem. at 19). Accordingly, defendants' motion for summary judgment on plaintiff's fabrication claim must be denied.

V.  **SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S MALICIOUS ABUSE OF PROCESS CLAIM.**

    A.  **The Factual Dispute Over Fabricated Evidence Precludes Summary Judgment.**

The same factual issues which preclude summary judgment on plaintiff's false arrest, malicious prosecution and fair trial claims – namely, whether or not P.O. Salim fabricated evidence by falsely claiming to have observed plaintiff toss away a bag of drugs – likewise preclude summary judgment on his malicious abuse of process claim.  See Henry v. City of New York, No. 02 Civ. 4824, 2003 U.S. Dist. LEXIS 15699, * 11 (S.D.N.Y. Sept. 8, 2003) ("The factual dispute regarding the planting of evidence precludes granting summary judgment on the malicious abuse of process claim"); Hernandez v. City of New York, No. 01 Civ. 4376, 2003 U.S. Dist. LEXIS 21146, * 25 (S.D.N.Y. Nov. 18, 2003)  (denying summary judgment on the malicious abuse of process claim because "[a]  reasonable jury could believe [plaintiff's] account ... and find that [defendant] fabricated the assault incident").  Accordingly, defendants' motion for summary judgment on plaintiff's malicious abuse of process claim must be denied.

VI.  **SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S MONELL CLAIM AGAINST THE CITY OF NEW YORK.**

    A.  **Two Independent Studies Support Plaintiff's Claim That The City of New York Has An Unlawful Pattern and Practice of Disproportionately Stopping African-American Males.**

In Monell v. Dep't of Social Services, 436 U.S. 658, 691 (1978), the Supreme Court recognized that municipal liability may be based not only upon formally promulgated policies and decisions of final policy makers, but also, upon "practices of state officials .... so permanent and well settled as to constitute a 'custom or usage' with the force of law." Monell, 436 U.S. at 691.  Thus, a "1983 plaintiff may establish a municipality's liability by demonstrating that the actions of

-23-

subordinate officers are sufficiently widespread to constitute constructive acquiescence of senior policy makers." Sorlucco v. New York City Police Dept., 971 F.2d 864, 871 (2d Cir. 1992). The existence of such a policy may be inferred "from circumstantial proof, [such as] evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force in violation of the complainant's civil rights. Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991). The appropriate inquiry "focuses on the actual or constructive knowledge of the municipality as well as upon the implied knowledge and reliance of municipal employees of that practice." Gentile v. County of Suffolk, 926 F.2d. 142, 153 (2d Cir. 1991). "[D]eliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or forestall further incidents. Vann v. City of New York, 72 F.3d. 1040, 1049 (2d Cir. 1995).

    In this case, plaintiff alleges under Monell that he was unlawfully stopped – and then arrested – as a result of the N.Y.P.D.'s pattern and practice of wrongfully stopping and detaining African-Americans based on racial profiling.  In support of this claim, plaintiff relies upon two separate studies: (1) the Civilian Complaint Review Board's June 2001 study, entitled "Street Stop Encounter Report: An Analysis of CCRB Complaints Resulting from the New York Police Department's 'Stop and Frisk' Practices"; and (2) the Office of the Attorney General of the State of New York, Civil Rights Bureau's December 1, 1999 report entitled "New York City Police Department's 'Stop and Frisk' Practices: A Report to the People of the State of New York from the Office of the Attorney General." ( Norinsberg Decl., Ex. J and Ex.K).  Plaintiff intends to rely upon

these two studies at trial.[11] Since the two cited studies directly support plaintiff's claims that he was stopped as a result of racial profiling – and not, as P.O. Salim claims, because of allegedly tossing away a bag of drugs – defendants' motion for summary judgment on plaintiff's Monell claim must be denied.  See Taylor v. City of New York, No. 03 Civ. 6477, 2006 U.S. Dist. LEXIS 41429, at *20-21 (S.D.N.Y. June 11, 2006)  (denying summary judgment on plaintiff's Monell claim, where "these [two] studies support plaintiff's contention that the NYPD may have had a practice of inordinately stopping and searching African-Americans and that this practice as obvious, as it was the subject of numerous complaints", and holding that "plaintiff has [thus] provided more than enough proof to create an issue of fact as to the existence of an unconstitutional practice and on this issue of whether this practice caused him harm.")

## CONCLUSION

For all of the foregoing reasons, it is respectfully submitted that defendants' motion  for summary judgment should be denied in its entirety, and that this Court should grant such other and further relief as it deems just and proper.

---

[11]Federal Rule of Evidence 803(8)(c) expressly provides a hearsay exception for public records which set forth "factual findings resulting from an investigation made pursuant to authority granted by law." Miranda-Ortiz v. Demig, No. 94 Civ. 476, 1998 U.S. Dist. LEXIS 17147, *2 (S.D.N.Y. Oct. 29, 1998).  Such reports are presumed to be both trustworthy and admissible. See Gentile, 926 F.2d at 148 (2d Cir. 1991) ("prevailing law on this issue indicates that admissibility of evidence of this sort is generally favored."); Bradford Trust Co. v. Merrill Lynch, 805 F.2d 49, 54 (2d Cir. 1986) 803(8) (c) is "premised on the assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports."); Miranda-Ortiz v. Demig, No. 94 Civ. 476, 1998 U.S. Dist. LEXIS 17147, *2 (S.D.N.Y. Oct. 29, 1998) ("investigative reports encompassed within Rule 803(8) (c) are presumed to be trustworthy.")

Dated: New York, New York
      December 3, 2009

                                    Respectfully submitted,


                                    Jon L. Norinsberg (JN 2133)
                                    Attorney for Plaintiff
                                    225 Broadway Suite 2700
                                    New York, N.Y. 10007
                                    (212) 791-5396

-26-